UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

MADISON KRCEK,

            Plaintiff,

vs.

MACOMB COMMUNITY COLLEGE,
CHESTERFIELD TOWNSHIP,
MOHAMED TARABAH, in his
individual capacity, and MICHAEL
CIARAMITARO, in his individual capacity,
*severally and individually*,

            Defendants.

Case No.
Hon.

_____/

Brian J. Farrar (P79404)
STERLING ATTORNEYS AT LAW, P.C.
Attorneys for Plaintiff
33 Bloomfield Hills Pkwy., Ste. 250
Bloomfield Hills, MI 48304
(248) 644-1500
bfarrar@sterlingattorneys.com

_____/

# COMPLAINT AND JURY DEMAND

Plaintiff Madison Krcek, by her attorneys, Sterling Attorneys at Law, P.C., for her Complaint and Jury Demand against defendants submits the following:

## JURISDICTIONAL ALLEGATIONS

1.    Plaintiff is an individual residing in Burtchville, Michigan, within the jurisdiction of the U.S. District Court for the Eastern District of Michigan.

2.     Defendant Macomb Community College ("MCC") is a public community college located in Warren, Michigan, within the jurisdiction of the U.S. District Court for the Eastern District of Michigan.

3.     MCC maintains a police academy called the Criminal Justice Training Center that allows students to earn credits to apply towards an associate degree in law enforcement.

4.     Defendant Chesterfield Township ("Chesterfield") is a charter township of Macomb County, Michigan, within the jurisdiction of the U.S. District Court for the Eastern District of Michigan.

5.     Chesterfield owns, operates, manages, directs, and controls the Chesterfield Township Police Department.

6.     Defendant Mohamed Tarabah ("Tarabah") is an instructor at MCC's police academy.

7.     Defendant Michael Ciaramitaro ("Ciaramitaro") is the Director of Training at MCC's police academy.

8.     Plaintiff brings this action pursuant to Title IX of the Civil Rights Act of 1964 ("Title IX"), 20 USC 1681 *et seq.* (against MCC only), Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 USC 2000e *et seq.* (against defendants MCC and Chesterfield only), Michigan's Elliott-Larsen Civil Rights Act, MCL 37.2101, *et seq.* ("ELCRA"), and 42 USC Section 1983 ("Section 1983") (against defendants Tarabah and Ciaramitaro only).

9.   This Court has federal question jurisdiction over plaintiff's federal claims under 28 USC 1331 because this action arises under the laws of the United States.

10.   This Court has supplemental jurisdiction over plaintiff's state law claims under 28 USC 1367(a).

11.   Venue is proper under 28 USC 1391(a)(2), (b)(1) and (b)(2) because all the defendants reside in this district and the unlawful actions giving rise to the claims occurred within the Eastern District of Michigan.

## GENERAL ALLEGATIONS

12.   Defendant Chesterfield hired plaintiff in or about October 2022 as a public service aide/police cadet for its police department.

13.   At all times, plaintiff was an excellent employee and dedicated public servant.

14.   Plaintiff expressed an interest in becoming a full-time police officer and defendant Chesterfield agreed to sponsor plaintiff to attend the MCC police academy.

15.   In or about August 2023, plaintiff enrolled at MCC as a cadet in its police academy.

16.   Defendant Chesterfield paid for plaintiff to attend the MCC police academy and continued to pay plaintiff her salary while she attended MCC.

17.     Successful completion of the police academy was a requirement for plaintiff to continue her employment at defendant Chesterfield's police department, and to become a police officer.

18.     Shortly after beginning her enrollment, plaintiff observed a culture at defendant MCC's police academy in which female cadets were treated worse than their male counterparts.

19.     Female cadets, including plaintiff, were disciplined more harshly than the male cadets who had committed the same alleged infractions, held to higher standards than the male cadets, and frequently subjected to sexual harassment at the hands of MCC instructors.

20.     One of plaintiff's instructors at the police academy, defendant Tarabah, frequently made inappropriate sexual comments to plaintiff and other female cadets.

21.     Defendant Tarabah referred to another female cadet as "babe."

22.     Defendant Tarabah would pay extra attention to plaintiff, and other female cadets, and tried to recruit plaintiff to come work for his department after graduating from the academy.

23.     Defendant Tarabah inappropriately touched plaintiff around her waist, thighs, and buttocks area.

24.     Plaintiff told defendant Tarabah that his behavior was inappropriate but he refused to end the harassment.

25.     After plaintiff requested that defendant Tarabah stop his harassing and inappropriate behavior, defendant Tarabah became more critical of plaintiff's performance and falsely reported to defendant Ciaramitaro that plaintiff was having disciplinary problems.

26.     Plaintiff complained to defendant Chesterfield's Chief of Police that she was being harassed and discriminated against at MCC's police academy, but the Chief of Police refused to take any action to correct this.

27.     Plaintiff also complained to defendant Ciaramitaro that defendant Tarabah was engaging in discriminatory and harassing behavior towards plaintiff due to her gender.

28.     Shortly thereafter, defendant Ciaramitaro issued plaintiff a "demerit" for not storing her protective ear muffs in her pants pocket, even though the male cadet standing next to plaintiff was also not storing his protective ear muffs in his pants pocket.

29.     The male cadet standing next to plaintiff did not receive a demerit or discipline.

30.     When plaintiff spoke to defendant Ciaramitaro later that day about why she received a demerit but the male cadet did not, defendant Ciaramitaro told plaintiff that her pants were "too tight."

31.     Plaintiff's pants were issued to her by defendant Chesterfield and were the same pants that all the cadets at the police academy wore.

32.    After plaintiff complained to defendant Ciaramitaro about the discrimination and sexual harassment, she began receiving more disciplines that were unwarranted.

33.    These disciplines and demerits were all issued by defendant Ciaramitaro.

34.    Plaintiff, once again, complained to her superiors at defendant Chesterfield's police department, and also to Ciaramitaro, that these demerits were unwarranted and were issued in retaliation for her complaints of sexual harassment and discrimination.

35.    Defendant Ciaramitaro was in regular communication with representatives from defendant Chesterfield's police department throughout plaintiff's enrollment at MCC.

36.    Defendant Ciaramitaro falsely reported to defendant Chesterfield that plaintiff was having disciplinary problems.

37.    In fact, on the day plaintiff received the demerit for not having her ear muffs in her pants pocket, plaintiff observed defendant Ciaramitaro meeting for approximately one hour in his office with one of plaintiff's superiors at the Chesterfield Police Department.

38.    On or about October 10, 2023, defendant Chesterfield terminated plaintiff's employment.

39.    Defendant Chesterfield did not provide plaintiff with any reason for her termination.

40.    Immediately thereafter, defendant MCC dismissed plaintiff from its police academy, even though plaintiff's work ethic and performance were excellent, and even better than that of the male cadets in her class.

41.    Prior to enrolling at defendant MCC, plaintiff had never received any discipline or complaints about her job performance from defendant Chesterfield.

### COUNT I (as to MCC only)

### SEX DISCRIMINATION AND RETALIATION
### IN VIOLATION OF TITLE IX

42.    Plaintiff incorporates the preceding paragraphs by reference.

43.    Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."

44.    Title IX also makes it unlawful for an academic institution to retaliate against students who complain of sex discrimination and harassment.

45.    Defendant MCC is an educational institution as defined by Title IX and plaintiff was enrolled as a student at MCC.

46.     The sex-based harassment and discrimination plaintiff experienced was so severe, pervasive, and objectively offensive that it deprived plaintiff of access to educational opportunities or benefits.

47.     Defendant MCC created and/or subjected plaintiff to a hostile educational environment in violation of Title IX of the Education Amendments of 1972.

48.     Defendant MCC treated plaintiff and other female students worse than it treated its male students.

49.     Defendant MCC and its officials and administrators had actual or constructive knowledge of the sexual harassment and discrimination plaintiff was subjected to at its police academy.

50.     Defendant MCC's failure to promptly and appropriately respond to plaintiff's allegations of sexual harassment and discrimination, resulted in plaintiff, on the basis of her sex, being excluded from participation in, being denied the benefits of, and being subjected to discrimination in an education program in violation of Title IX.

51.     Defendant MCC retaliated against plaintiff for complaining of discrimination and sexual harassment.

**COUNT II (as to MCC and CHESTERFIELD only)**

**SEX DISCRIMINATION AND RETALIATION
IN VIOLATION OF TITLE VII**

52.     Plaintiff incorporates the preceding paragraphs by reference.

53.     On or about January 3, 2024, plaintiff filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 USC 2000e *et seq.* against both MCC and Chesterfield Township.

54.     Plaintiff received her Notice of Right to Sue letter from the EEOC regarding her charge against MCC on or about March 18, 2024, and her Notice of Right to Sue letter from the EEOC regarding her charge against Chesterfield on or about May 30, 2024, permitting plaintiff to commence a civil action for the alleged violations of Title VII within 90 days of the date of those letters.

55.     Title VII makes it unlawful for an employer or employment agency to discriminate against employees on the basis of sex, or to sexually harass employees.

56.     Title VII also makes it unlawful for an employer or employment agency to retaliate against employees who complain of sex discrimination or sexual harassment.

57.     At all relevant times, plaintiff was an employee and defendant Chesterfield was her employer covered by and within the meaning of Title VII.

58.    During her enrollment, defendant MCC controlled the terms, conditions, and privileges of plaintiff's employment at defendant Chesterfield.

59.    Defendant MCC controlled plaintiff's access to the job market because her successful completion of MCC's police academy was a requirement for her continued employment at defendant Chesterfield's police department.

60.    Defendants MCC and Chesterfield were plaintiff's joint employers.

61.    Defendants MCC's and Chesterfield's treatment of plaintiff was based, at least in part, on unlawful consideration of her sex.

62.    Defendants MCC and Chesterfield, by their agents, were predisposed to discriminate on the basis of sex and acted in accordance with that predisposition.

63.    Plaintiff engaged in activity protected by Title VII when she complained internally of discrimination, retaliation, and sexual harassment.

64.    Defendants MCC's and Chesterfield's treatment of plaintiff is in violation of the anti-retaliation provisions of Title VII.

65.    The actions of defendants by their agents were deliberate and intentional, and engaged in with malice, or with reckless indifference to the rights and sensibilities of plaintiff.

66.    As a direct and proximate result of defendants' wrongful and discriminatory treatment of plaintiff, plaintiff has suffered injuries and damages, including but not limited to, loss of past, present and future earnings and earning

capacity; loss of the value of fringe and pension benefits; mental and emotional

distress, including anxiety and mental anguish, humiliation and embarrassment;

and the loss of the ordinary pleasures of everyday life.

## COUNT III

### SEX DISCRIMINATION AND RETALIATION
### IN VIOLATION OF THE ELLIOTT-LARSEN CIVIL RIGHTS ACT

67.    Plaintiff incorporates the preceding paragraphs by reference.

68.    ELCRA prohibits, among other things, discriminatory practices,

policies, and customs based on sex, in employment and education.

69.    Defendants discriminated against plaintiff with respect to the terms,

conditions, and privileges of her employment and educational opportunities due

to plaintiff's sex.

70.    Defendants were predisposed to discriminate against plaintiff based

on her sex, and subjected plaintiff to a hostile environment.

71.    Defendants retaliated against plaintiff when she complained of

sexual harassment and discrimination.

72.    Defendants' discrimination adversely affected plaintiff's

compensation, terms, conditions, and privileges of employment, and her ability

to pursue her education, in violation of the Elliott-Larsen Civil Rights Act, MCL

37.2101, *et seq*.

73.    As a direct and proximate result of defendants' conduct, plaintiff has suffered and will continue to suffer lost compensation, emotional distress, and other incidental and consequential damages, including attorney fees.

## COUNT IV (as to TARABAH and CIARAMITARO only)

### DISCRIMINATION IN VIOLATION
### OF THE CIVIL RIGHTS ACT OF 1871

74.    Plaintiff incorporates the preceding paragraphs by reference.

75.    Plaintiff is a "citizen" within the meaning of The Civil Rights Act of 1871, 42 USC 1983.

76.    Defendants Tarabah and Ciaramitaro are both a "person" within the meaning of Section 1983.

77.    Defendants Tarabah and Ciaramitaro are being sued in their individual capacities.

78.    At all relevant times, defendants Tarabah and Ciaramitaro were acting under "color of law."

79.    By discriminating against plaintiff due to her sex, and/or sexually harassing plaintiff, defendants Tarabah and Ciaramitaro caused plaintiff to be deprived of rights, privileges, and/or immunities secured by the Constitution and federal laws.

80.    The rights at issue in this lawsuit were clearly established at the time of defendants Tarabah's and Ciaramitaro's unlawful conduct.

81.    The discriminatory practices at issue were intentional and willful, and engaged in with malice or with reckless indifference to the rights and sensibilities of plaintiff.

82.    As a direct and proximate result of the defendants Tarabah's and Ciaramitaro's wrongful and discriminatory treatment of plaintiff, plaintiff has suffered injuries and damages, including, but not limited to, loss of past, present and future earnings and earning capacity; loss of the value of fringe and pension benefits; mental and emotional distress, including anxiety and mental anguish; humiliation and embarrassment; and loss of the ordinary pleasures of everyday life, including the right to seek and pursue gainful occupation of choice.

WHEREFORE, plaintiff respectfully requests that this Honorable Court enter judgment against defendants, in whatever amount plaintiff is found to be entitled, together with punitive damages, equitable relief, interest as an element of damages, statutory interest, and attorney fees and costs.

## JURY DEMAND

Plaintiff Madison Krcek, by her attorneys Sterling Attorneys at Law, P.C., demands a trial by jury.

Respectfully submitted,

STERLING ATTORNEYS AT LAW, P.C.

By:   /s/ Brian J. Farrar
      Brian J. Farrar (P79404)
      Attorneys for Plaintiffs
      33 Bloomfield Hills Pkwy., Ste. 250
      Bloomfield Hills, MI 48304
      (248) 644-1500

Dated:  June 13, 2024