UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| MADISON KRCEK,<br><br>    Plaintiff,<br><br>v.<br><br>MACOMB COMMUNITY COLLEGE,<br>CHESTERFIELD TOWNSHIP,<br>MOHAMED TARABAH, and<br>MICHAEL CIARAMITARO,<br><br>    Defendants. | Case No. 24-11548<br>Honorable Laurie J. Michelson |

**ORDER GRANTING DEFENDANT MCC'S MOTION TO DISMISS
COUNT II OF THE COMPLAINT [15]**

In October of 2022, Madison Krcek began working at the Chesterfield Township Police Department as a public service aid and police cadet. But she wanted to become a full-time police officer. So she enrolled as a student at the Macomb Community College's police academy. There, Krcek alleges that she was discriminated against. She claims that female cadets were treated unfairly and disciplined more than their male counterparts. She also claims that she was inappropriately touched and harassed by Mohamed Tarabah, an MCC instructor. Krcek reported the alleged harassment to Chesterfield's Chief of Police as well as Michael Ciaramitaro, the Director of Training at MCC. Shortly thereafter, Krcek claims Ciaramitaro told representatives of the township that Krcek was having disciplinary problems. This, she says, led the township to terminate her employment.

So Krcek filed this lawsuit, bringing a variety of claims against MCC, Chesterfield Township, Tarabah, and Ciaramitaro. Now before the Court is MCC's motion to dismiss Count II of Krcek's complaint, a Title VII claim against the college. (ECF No. 15.) MCC argues that it cannot be held liable under Title VII because it was not Krcek's employer as that term is defined in the statute. This Court agrees. Thus, for the foregoing reasons, MCC's motion is GRANTED.

## I.

In deciding a motion to dismiss, the Court "construes the complaint in the light most favorable" to Krcek and determines whether her "complaint 'contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *See Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 403 (6th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Detailed factual allegations are not required to survive a motion to dismiss, *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 614 (6th Cir. 2012), but a complaint must "raise a right to relief above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). What is plausible is "a context-specific task" requiring this Court "to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

So, at this stage, the Court accepts all Krcek's well-pled factual allegations as true and presents them as such below. *See, e.g., Hill v. Snyder*, 878 F.3d 193, 203 (6th Cir. 2017).

## II.

### A.

In August 2023, Madison Krcek enrolled as a student in Macomb Community College's police academy program, called the Criminal Justice Training Center. (ECF No. 1, PageID.3.) The CJTC program allowed Krcek to take classes for credit toward an associate degree in law enforcement, while also receiving police training. (*Id*.) Krcek was required to complete the program to become a full-time police officer for the Chesterfield Police Department, who employed her as a police cadet and sponsored her participation in the MCC program, paying her tuition as well as her salary. (*Id*. at PageID.3–4.)

But soon after starting the program, Krcek "observed a culture at . . . MCC's police academy in which female cadets were treated worse than their male counterparts." (*Id*. at PageID.4.) Specifically, "[f]emale cadets, including [herself], were disciplined more harshly than the male cadets who had committed the same alleged infractions, held to higher standards than the male cadets, and frequently subjected to sexual harassment at the hands of MCC instructors." (*Id*.) One instructor, Mohamad Tarabah, "frequently made sexually inappropriate comments to [Krcek] and other female cadets" and touched Krcek's "waist, thighs, and buttocks area." (*Id*.) When Krcek told Tarabah he was being inappropriate, he "became more critical about her performance" and "falsely reported performance issues" to another MCC instructor, Michael Ciaramitaro. (*Id*. at PageID.4–5.) Krcek later complained to Chesterfield's Chief of Police that she was being harassed and discriminated against at MCC, but the Chief refused to act. (*Id*. at PageID.5.)

Meanwhile, Krcek began receiving unwarranted "disciplines and demerits" from Ciaramitaro. (*Id.* at PageID.6.) For example, she describes an instance where Ciaramitaro issued her a demerit for not storing her protective earmuffs in her pants pocket. But the male cadet standing next to her did not receive such a demerit for the same conduct. (*Id.*) Ciaramitaro then "falsely reported . . . disciplinary problems" to Chesterfield. (*Id.* at PageID.6.) Krcek claims these unwarranted disciplinary actions culminated in the termination of her employment with Chesterfield and subsequently her enrollment in the MCC program. (*Id.* at PageID.6–7.)

**B.**

On June 3, 2024, Krcek filed this suit alleging sex discrimination and retaliation in violation of Title IX against MCC (Count I), sex discrimination and retaliation in violation of Title VII against MCC and Chesterfield (Count II), sex discrimination and retaliation in violation of the Michigan Elliott-Larsen Civil Rights Act against all Defendants (Count III), and discrimination in violation of 42 U.S.C. § 1983 against Tarabah and Ciaramitaro (Count IV). (*Id.* at PageID.7–12.)

On August 22, 2024, MCC moved to dismiss Count II of the complaint under Federal Rule of Civil Procedure 12(b)(6). (ECF No. 15.) MCC argues that Krcek was a student at MCC, not an MCC employee, and thus Title VII does not cover their relationship. (*Id.* at PageID.99.) Krcek does not dispute that she was not directly employed by MCC. (ECF No. 20, PageID.154.) But she still contends MCC was a joint employer with Chesterfield. (*Id.*) This is because she had to complete training at MCC's police academy as a requirement of her employment at the Chesterfield Police

4

Department and MCC's purported retaliation affected her access to employment opportunities. (*Id.* at PageID.159–160). For its part, MCC argues that Krcek "fails to allege facts suggesting a joint employment relationship" between MCC and Chesterfield.[1] (ECF No. 15, PageID.102.)

### III.

The parties agree on the central legal issue: was MCC Krcek's "employer" within the meaning of Title VII? *See Swallows v. Barnes & Noble Book Stores, Inc.*, 128 F.3d 900, 922 (6th Cir. 1997). That statute defines "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees," *see* 42 U.S.C § 2000e(b), and "employee" as "an individual employed by an employer," *see id.* § 2000e(f). As the Sixth Circuit has explained, these "completely circular definitions explain nothing, so courts have looked to common-law understandings of the employment relationship to fill in the void." *See Post v. Trinity Health-Mich.*, 44 F.4th 572, 579 (6th Cir. 2022) (cleaned up).

Interpreting the common law, the Sixth Circuit has fashioned two theories by which a defendant that does not directly employ a plaintiff may still be considered an "employer" for purposes of Title VII liability: the "joint employer" theory and the "significantly affects access" theory. *See Nethery v. Quality Care Invs., L.P.*, 814 F.

---

[1] After MCC moved to dismiss Count II, the Court granted Krcek leave to amend her complaint, "including by removing Count II as to MCC or adding additional factual allegations on the joint-employer matter." (ECF No. 18, PageID.134.) Krcek did not take the opportunity to amend, instead filing a response to MCC's motion to dismiss claiming she already provided "enough facts to establish that MCC and Chesterfield worked as joint employers." (ECF No. 20, PageID.158.)

App'x 97, 102–04 (6th Cir. 2020) (per curiam); *Roddy v. Tenn. Dep't of Corr.*, 650 F. Supp. 3d 599, 605 (M.D. Tenn. 2023). Krcek advances arguments under both theories of liability, arguing that (1) MCC qualified as her "joint employer," and (2) MCC controlled access to her employment opportunities.[2]

### A.

Start with the joint employer theory. As a threshold matter, mere conclusory legal assertions are not entitled to a presumption of truth for purposes of determining the success of a Rule 12(b)(6) motion. Accordingly, Krcek's assertion that "MCC and Chesterfield were [her] joint employers" (ECF No. 1, PageID.10) does not make it so. *See, e.g., Berry v. Univ. Sch. of Nashville*, No. 19-00830, 2020 WL 3268732, at *8 (M.D. Tenn. June 17, 2020) (dismissing plaintiff's complaint under 12(b)(6) where he alleged only the "conclusory assertion" that defendant jointly employed him without "sufficient facts about [the defendant's] role or actions" to establish that it was joint employer).

It is true, though, that under the "joint employer" theory, "an entity that is not the plaintiff's formal employer may be treated . . . as if it were the employer for the purposes of employment laws such as Title VII." *Sanford v. Main St. Baptist Church Manor, Inc.* ("*Sanford II*"), 449 F. App'x 488, 491 (6th Cir. 2011). The theory applies

---

[2] Krcek's complaint collapses her joint-employer argument and her argument that MCC controlled her access to employment opportunities, folding the latter into the former. (*See* ECF No. 20, PageID.159–160 (citing *Christopher v. Stouder Mem'l Hosp.*, 936 F2d 870 (6th Cir 1991)).) The Sixth Circuit, however, has delineated between these two theories of Title VII liability. *See Nethery*, 814 F. App'x at 102–104. Thus, construing the complaint in the light most favorable to Krcek, this Court will address the merits of the two arguments separately.

where an employee is "formally employed by one entity" but "has been assigned to work in circumstances that justify the conclusion" that the employee is "at the same time constructively" employed at a different entity. *Sanford v. Main St. Baptist Church Manor, Inc.* ("*Sanford I*"), 327 F. App'x 587, 593 (6th Cir. 2009) (quotation omitted).

These circumstances exist where entities "share or co-determine those matters governing essential terms and conditions of employment." *Carrier Corp. v. NLRB*, 768 F.2d 778, 781 (6th Cir. 1985); *Nethery*, 814 F. App'x at 103. In determining whether an entity qualifies as a joint employer, the major factors courts consider are the "entity's ability to hire, fire or discipline [the plaintiff], affect their compensation and benefits, and direct and supervise their performance." *EEOC v. Skanska USA Bldg., Inc.*, 550 F. App'x 253, 256 (6th Cir. 2013). Courts may also analyze "the supervision of the employees' day-to-day activities . . ., promulgation of work rules and conditions of employment, work assignments, and issuance of operating instructions." *Loewen v. Grand Rapids Med. Educ. Partners*, No. 10-1284, 2012 WL 1190145, at *4 (W.D. Mich. Apr. 9, 2012) (citing *W.W. Grainger, Inc. v. NLRB*, 860 F.2d 244, 247 (6th Cir. 1988)).

At the outset, the "joint employer" theory is a poor fit for this case. In the typical joint-employer case, a plaintiff alleges that she has been "assigned to *work*" for an entity that is not her formal employer. *Sanford I*, 327 F. App'x at 593 (emphasis added). Prime examples include contractors and subcontractors, *see, e.g.*, *Skanska*, 550 F. App'x at 253, and "staffing agencies and their client entities," *Lima v. Addeco*,

7

634 F. Supp. 2d 394, 400 (S.D.N.Y. 2009). This case is nothing like that. Krcek states that she was "enrolled as a student" at MCC, which is a "public community college" that "maintains a police academy . . . allow[ing] students to earn credits to apply towards an associate degree in law enforcement." (ECF No. 1, PageID.2, 7.) Put differently, Krcek does not allege that *she worked for* MCC but rather that she *studied at* MCC, where she was enrolled in a program that was required to become a full-time police officer at Chesterfield. It is a stretch to say that Krcek was "employed by" a college simply because she took classes there. *See* 42 U.S.C. § 2000e(f). And Krcek does not cite any authority to support that novel theory, let alone anything to suggest that courts have expanded the joint employer theory in this way.

MCC highlights this discrepancy, noting that courts have generally found that Title VII does not protect students who do not maintain an employment relationship with the school. *See, e.g.*, *Hajjar-Nejad v. George Wash. Univ.*, 873 F. Supp. 2d 1, 14 (D.D.C. 2012) (finding that a medical student failed to allege a plausible claim under Title VII because there was no "employment relationship between him and [the school]"); *Pell v. Trs. of Columbia Univ.*, No. 97-0193, 1998 WL 19989, at *9 (S.D.N.Y. Jan. 21, 1998) (Sotomayor, J.) ("[B]ecause plaintiff was a student at Columbia University, not an employee, there exists no employer-employee relationship."). And that, because Krcek's complaint "explicitly alleges that she was a student enrolled in the College's police academy," her Title VII claim against MCC fails on its face. (ECF No. 15, PageID.100.)

8

But even applying the joint-employer theory here, the Court cannot find that Krcek has pled sufficient facts to state a plausible claim for relief. Krcek's complaint fails to adequately allege that Chesterfield and MCC "share or co-determine" any "essential terms and conditions" of Krcek's employment. *Carrier*, 768 F.2d at 781. To the contrary, it was Chesterfield—not MCC—that hired Krcek. (ECF No. 1, PageID.1.) It was Chesterfield—not MCC—that paid Krcek's salary. (*Id.* at PageID.3.) And it was Chesterfield—not MCC—that "terminated [Krcek's] employment." (*Id.* at PageID.6.) Krcek likewise pleads no facts to suggest that MCC had control over any of her benefits at Chesterfield. *See, e.g.*, *Skanska*, 550 F. App'x at 256 (explaining that, in determining whether an entity is a joint employer, courts consider the entity's ability to "affect [plaintiff's] compensation and benefits"). Nor does Krcek provide any details regarding her schedule at MCC, for example how many days or hours a week she attended the academy, who set those hours, and who monitored her attendance. *Id.* (explaining that, in determining whether an entity is a joint employer, courts consider the entity's ability to "direct and supervise [plaintiff's] performance.").

In opposition, Krcek highlights portions of her complaint that she says support "an inference of [MCC's] joint employer status." (ECF No. 20, PageID.157–158.) These examples include that: (1) Chesterfield paid for her to attend MCC, (2) completion of the MCC program was a requirement of her employment at Chesterfield, (3) Ciaramitaro (the Director of Training at MCC) was in communication with

9

Chesterfield while Krcek was enrolled at MCC, and (4) Ciaramitaro falsely reported to Chesterfield that Krcek had disciplinary problems.

These assertions do not establish that MCC "co-determine[d] those matters governing essential terms and conditions of employment." *See Carrier*, 768 F.2d at 781. That Chesterfield paid Krcek's tuition to attend MCC is irrelevant in determining MCC's status as an employer under Title VII. Likewise, the prerequisites of employment that Chesterfield mandates for its employees are not pertinent to whether MCC was *itself* an employer. True, Krcek's allegation that Ciaramitaro was in communication with Chesterfield and, on at least one occasion, reported Krcek's disciplinary problems could weigh in favor of MCC being a joint employer. *See Skanska*, 550 F. App'x at 256 (finding that ability to "discipline" plaintiff is indicative of an employer-employee relationship). But this allegation, standing alone, is not enough to state a claim. *Compare Bolin v. Gen. Motors, LLC*, No. 16-13686, 2017 U.S. Dist. LEXIS 136665, at *34 (E.D. Mich. Aug. 25, 2017) (finding that plaintiffs failed to allege an entity was a joint employer when they did not allege the entity controlled wages and benefits, day-to-day instructions, supervision, evaluation, and the ability to assign work), *with Hubbard v. Evolution Wireless, Inc.*, No. 19-234, 2021 WL 6333363, at *15–16 (E.D. Tenn. Dec. 14, 2021) (denying summary judgment and finding a factual dispute as to joint employer status where discovery revealed defendant assigned trainings, tracked performance, issued management directives, and recruited, hired, and fired employees).

Seeking to avoid this result, Krcek argues, for the first time in her response brief, that MCC "controlled every movement [Krcek] did throughout the workday, and would regularly report plaintiff's progress back to Chesterfield. As a result, MCC staff became plaintiff's *de facto* supervisors." (ECF No. 20, PageID.156.) But on a Rule 12(b)(6) motion, this Court is confined to the pleadings and thus cannot consider allegations not raised in Krcek's complaint. *See Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 481 (6th Cir. 2009) ("[A] district must generally confine its Rule . . . 12(b)(6) ruling to matters contained within the pleadings."); *Guzman v. United States Dep't of Homeland Sec.*, 679 F.3d 425, 429 (6th Cir. 2012) ("When presented with such a motion, courts consider whether the *complaint* states a claim upon which relief could be granted, not whether the plaintiff has stated—or could state—such a claim elsewhere."). Similarly, Krcek says that "after discovery, evidence will show that representatives from MCC repeated and routinely and incessantly communicated negative information about [her] performance." (ECF No. 20, PageID.158.) "Discovery," however, "cannot be used as a fishing expedition to uncover the facts necessary to support the causes of action presented in the complaint." *New Albany Tractor, Inc. v. Louisville Tractor, Inc.*, 650 F.3d 1046, 1051 (6th Cir. 2011).

Confining its review to the facts presented in Krcek's complaint, this Court finds that Chesterfield and MCC were not "joint employers" of Krcek. Rather, Krcek was an employee of Chesterfield and a student at MCC. So MCC cannot be liable under Title VII via the joint-employer theory of liability.

## B.

Similarly, Krcek has not alleged sufficient facts to establish that MCC qualifies as an employer under the "access to employment" theory. *See, e.g.*, *Nethery*, 814 F. App'x at 104.

Under this theory, a non-employer can be liable under Title VII where it wields "control over [the plaintiff's] *access* to his employment." *Satterfield v. Tennessee*, 295 F.3d 611, 618 (6th Cir. 2002). For instance, in *Christopher v. Stouder Memorial Hospital*, 936 F.2d 870, 872 (6th Cir. 1991), the plaintiff nurse worked directly for doctors who practiced at a particular hospital. The hospital denied plaintiff practicing privileges on allegedly discriminatory grounds. In doing so, the hospital made it physically impossible for plaintiff to work for her employer—the doctors who operated out of that hospital. In this narrow scenario, the Sixth Circuit held that the hospital could be liable under Title VII because the hospital effectively had "control over access" to the plaintiff's employment. *Id.* at 875.

By contrast, in *Satterfield*, a state agency fired the plaintiff vehicle inspector after a third-party physician group concluded that the plaintiff was physically unable to perform the job. 295 F.3d at 618. The Court held that *Christopher*'s access-to-employment theory did not apply. *Id.* The state agency employer merely *chose* to "rel[y] on" the third-party's assessment yet "at all times retained control" of the plaintiff's "*access* to his employment." *Id.* The third-party physician group had not unilaterally prevented the plaintiff from doing his job; rather, the state agency had simply decided to condition that job on the physician group's evaluation. *Id.* at 618 &

12

n.7 ("In this case, even if [the third party] were to revise [its] report, [it] could not force the Department to hire [the plaintiff].").

As another district court within the Sixth Circuit recently explained in distinguishing *Christopher*, where the formal employer "controls the qualifications" for a job and simply *chooses* to make certification through a third party a "mandatory qualification," that third party is not an employer under Title VII. *Jones v. Ohio Dep't of Pub. Safety*, No. 22-3692, 2023 U.S. Dist. LEXIS 91457, at *12 (S.D. Ohio May 24, 2023). More specifically:

> In *Christopher*, the hospital's decision "bound" the physicians. *See* 936 F.2d at 872. That is, the physicians could not unilaterally elect to continue employing the nurse in the hospital operating room. Here, by contrast, the Cincinnati Police Department controls the qualifications for its police force—the Department could hire Jones as a police officer even without LEADS access. So unlike in *Christopher*, where the hospital's choice per se disqualified the nurse from the employment at issue, here *the Department* chose to make LEADS access a mandatory qualification.

*Id.* at *12; *see also Nethery*, 814 F. App'x. at 104 (explaining that the "access to employment" theory applies only where a third party makes it "impossible for the plaintiff to work for her employer"); *Roddy*, 650 F. Supp. 3d at 605–06 (finding that where the Tennessee Department of Corrections "had the ability to ban [plaintiff nurse] from any of its [correctional] facilities," it was not an employer under Title VII because "[a]t all relevant times" the assigning employment agency still "maintained the unilateral authority to terminate [plaintiff]").

Similarly here, Krcek does not allege that MCC's actions made it inherently impossible for her to work at Chesterfield. Rather, she alleges that Chesterfield made

13

completion of the CJTC program a requirement for her continued employment. (ECF No. 1, PageID.4.) Thus, Chesterfield—and not MCC—"at all times retained control over [Krcek's] *access* to [her] employment." *Satterfield*, 295 F.3d at 618.

## IV.

For these reasons, the Court GRANTS MCC's motion to dismiss count II (ECF No. 15). Krcek may proceed with her Title VII claim against only Chesterfield.

SO ORDERED.

Dated: December 13, 2024

                                              s/Laurie J. Michelson
                                              LAURIE J. MICHELSON
                                              UNITED STATES DISTRICT JUDGE